Charles JONES et al., Plaintiffs,

v.

Sol WITTENBERG et al., Defendants.

Civ. No. C70–388.

United States District Court,
N. D. Ohio, W. D.

Dec. 17, 1976.

Dale Wilker, Advocates for Basic Legal Equality, Toledo, Ohio, Stanley A. Bass, New York City, Frank S. Merritt, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

John Hayward, Anthony G. Pizza, Lucas County Prosecutor, Gerald B. Lackey, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER

DON J. YOUNG, District Judge.

This action was originally filed on December 17, 1970, and has remained before this Court continuously ever since. February 17, 1971, in an elaborate memorandum the Court found that it had jurisdiction of the suit under Title 42 U.S.C. § 1983 and Title 28 U.S.C. § 2201. The Court determined that the matter was properly a class action, the class consisting of persons confined and to be confined in the Lucas County Jail. The principal defendants were the members of the Board of County Commissioners of Lucas County, Ohio and the Sheriff of Lucas County, Ohio.

As the years have passed, the incumbents of those offices have changed. From time to time the Court has entered orders of substitution as to the incumbent Sheriff. No such formal orders have been made as to the members of the Board of County Commissioners, and only one of the original defendants is still incumbent. However, it is abundantly clear that the proceedings have been against the defendant commissioners in their official capacities, rather than as individuals, and even without formal orders of substitution, it must be considered that the incumbent county commissioners are the defendants in this matter, not their predecessors.

As a practical matter, under the facts in the record, these changes of party pose some problems, for the present incumbents undertake to place the blame for failure to comply with the Court's order of July 30, 1971, upon their predecessors. This type of excuse is not valid in law. It is plausible in fact if the Court's order is read as establishing desirable goals, to be striven for and attained if possible. The order, however, is express, explicit, and definite. In those portions of the order where the defendants were allowed time to bring themselves into compliance, the time limits were definite, and expired some years ago. Thus the very minute that a new sheriff or county commissioner takes office, he is required to be in compliance with the order, whether or not his predecessor was. Of course, in an action of criminal contempt, to punish for violation of the order, the incumbent defendants could not be held accountable for anything but their own acts, but the matter now before the Court is not a case of criminal contempt, for it deals only with the defendants' failure to comply with the order, something that they could at any time purge themselves of contempt by doing.

The evidence at the hearing does not require extensive analysis. There can be no possible doubt that in its most essential elements, the defendants have never, since the order was entered, been in compliance with it. Actually, they do not deny this, their responses to the order to show cause being rather in the nature of confession and avoidance. They seek to excuse their wrongful acts, not to deny them.

This is extremely troublesome, because it has been well over five years since this Court's order was entered. In that order, the Court said expressly that it would retain jurisdiction for a sufficient length of time, "[T]o make it reasonably certain that the changes of methods and practices required will not be abandoned, forgotten or neglected, but have become permanently established."

The evidence showed beyond any doubt whatever that "the changes of methods and practices required" have not even been made. Thus they could not have been abandoned. It seems doubtful, in view of the history of the case, that they were forgotten, for the defendants, over the years, have had many reminders of them. To say they were neglected is hardly accurate, for in its legal meaning, neglect involves no element of wilfullness. The changes were not neglected, they were wilfully not made, because it was not the defendants' desire to make them.

The matter is further complicated by the fact that the defendants are about to

leave the old jail building, and remove their operations to a new one. Although none of the defendants has had the temerity to come out and say that making this move will moot this case, that idea is implied in their arguments. As will be demonstrated, the mootness point is without any merit whatsoever.

In its opinion filed July 9, 1971, the Court foreshadowed this problem, saying,

> The popular, and simplistic, idea is that the important source of the problem is a purely physical one, and that this is easily remedied. In other words, build a new jail, and everything will be neatly straightened out. There are two things wrong with this idea.

> The first, and most important, thing wrong is that the evidence clearly demonstrates that if a beautiful brand new jail were built, and operated the way the present jail is operated, there would be little improvement in the difficulties at first, and what improvement there was would very rapidly disappear.

The Court holds that the substituting of a new jail building for the old one will not moot this case, nor render inapplicable the basic requirements or even more than a very few specific provisions, of the Court's order of July 30, 1971.

Without going into all the details of the evidence adduced at the hearing on the order to show cause, the admitted failure of the defendants to comply with this Court's order of July 30, 1971, principally involves a few major issues. Because of the fragmentation of powers and responsibility under the Ohio statutes, which caused the order to impose some obligations upon all of the defendants, some on the defendant commissioners alone, and some on the defendant sheriff alone, the defendants seem to take the position that the order need not be considered as a whole, and that the individual defendants cannot be faulted except for their particular failures to comply.

This approach overlooks the fact that the failures of compliance are interrelated to an extent that each failure on one part generally results in failure on some other part.

Thus nearly all of the difficulties which were established at the hearing are related in greater or less degree to the failure to comply with § 14 of the order, which requires that at all times there will be not less than two guards on duty on each floor, at least one of whom shall at all times be on patrol of the cell blocks. This is the first major issue revealed by the evidence at the hearing on the order to show cause.

This provision was modified by a consent order filed May 8, 1974, which provided that in three specific cell blocks at least one guard should be posted within the catwalk area twenty-four hours a day, and that within seven days the defendant sheriff should submit to the Court a plan for providing continuous and effective guard patrols in the other cell blocks. This plan was never submitted.

On December 4, 1975, a motion was filed to modify this modification. This Court, in a somewhat ambiguous memorandum and order filed February 9, 1976, granted the motion by restoring the original provision of the order of July 30, 1971. These modifications are of little consequence, if one considers the basic intent and purpose of the order.

What the order of July 30, 1971, provided was that the prisoners were to be guarded constantly. The reason for this is that if they are not, the strong ones will prey upon the weak, the suicidal will kill themselves, and the seriously ill or disturbed will become worse.

The problem of the failure to keep the plumbing in order is also related to this problem. Prisoners who are watched constantly will have much more trouble damaging and plugging the plumbing, and even if they do succeed, the probabilities of detecting and punishing the miscreants will be greatly facilitated.

The problems of the plumbing are the responsibility of both the commissioners and the sheriff. The sheriff has failed to prevent the prisoners from damaging the plumbing. The commissioners have failed to provide additional plumbers, as they were required to do by § 9(e) of the order.

The same risks to the prisoners will be present in the new jail as are present in the old one unless the prisoners are constantly watched. Presumably the new jail has been arranged so that this kind of surveillance may more easily be maintained, although a matter dehors the record, this Court's inspection of the new facility, raises some questions about this.

Whether in the old jail or the new, the basic purpose of the Court's order is to ensure that those prisoners who need watching will be watched every minute of every hour of every day. Until the defendants cause this to be done, they are in contempt of this Court's order, which appears to be amply explicit as to this purpose.

The second major issue concerns the problems of medical treatment. This is encompassed in §§ 5, 13, and 21(e) of the order, particularly the last of them. While the last of these paragraphs applies specifically to the defendant sheriff, since by agreement the defendant commissioners assumed complete charge of the medical services in the jail, they, too, are chargeable with the failures to comply with this paragraph which were established in sometimes gruesome detail in the evidence. The defendants are clearly in contempt of this Court's order in respect to medical treatment.

Sufficient findings have been made up to this point for the Court very properly to conclude that as a matter of law, the defendants' contempt being established as deliberate and long continued, the defendants ought to be committed to the custody of the United States Marshal to be imprisoned until they purge themselves of contempt by complying with this Court's order in every respect, major and minor, in which the evidence showed that the order was not being carried out.

As this Court pointed out in its memorandum of February 9, 1976, it has had to swallow a bitter pill in the realization that it had failed to achieve its purpose of establishing so well practices of humane, proper and constitutional treatment of prisoners that the new facilities would not be just a larger version of the old evils. If in its frustration and despair the Court gave the defendants a bitter pill also, it would be yielding to a very human feeling.

However, from a practical standpoint, apart from the balm which such a method of disposition would apply to the Court's wounded dignity, the evidence leaves considerable doubt that so simple an approach would do much to remedy the evils still untouched after five years.

There is an ancient saying, "Quis custodiet ipsos custodes?" "Who is guarding the guards?" which is peculiarly applicable to this kind of litigation. The answer to the question is, "Nobody." The experience of this and other courts has demonstrated that it is not enough to make an order, no matter how detailed and explicit. Unless somebody checks the order against the defendants' performance, they do not perform. When someone watches them, they squirm, but they comply, or get out of the way for someone else to do so. Thus, rather than using the classical, simple, and entirely appropriate remedy of sending the defendants to jail with the keys in their pockets, this Court will undertake to monitor the defendants' future performance of its order.

The plaintiffs have requested, and the defendant commissioners have concurred in the request, that a Special Master be appointed to supervise compliance with this Court's order of July 30, 1971. The Court deems the suggestion as a reasonable approach to the problem of ensuring that the order is complied with by the parties in the future, whether they use the old jail, the new jail, or both.

THEREFORE, FOR THE REASONS STATED, GOOD CAUSE THEREFOR APPEARING,

it is

ORDERED that the motion filed by plaintiffs for appointment of a Special Master to supervise compliance with the order

of July 30, 1971, be, and it hereby is, granted and the parties are granted ten days from the date of filing of this order in which to make recommendations as to a proper person to be named as Special Master, and it is

FURTHER ORDERED that the function of the Special Master will be to study and evaluate all of the various reports that have been filed in this matter to date and to determine what further reports and evidence are necessary to show whether and to what extent the present administrative regulations and practices at the Lucas County Jail are in compliance with the order of July 30, 1971, and it is

FURTHER ORDERED that the Special Master shall have the authority to seek orders from the Court to show cause why the defendants, or any of their agents, employees, or persons acting in concert with them, should not be punished as for contempt for failure to comply with his instructions or orders, or the order of this Court, and it is

FURTHER ORDERED that the Special Master shall have the full power to hold hearings and to call witnesses, including both inmates and members of the staff of the Lucas County Jail as he shall deem necessary, expedient, or desirable in carrying out his duties, and it is

FURTHER ORDERED that the Special Master is authorized to have unlimited access to all files of the Lucas County Jail, unlimited access to the premises of said Jail, and all and every part thereof, at any time or times of his choosing, and without the necessity of giving advance notice to the institutional officials or personnel of his intention to visit said premises, and it is

FURTHER ORDERED that the Special Master shall be authorized to conduct confidential interviews at any time with any staff member or inmate, and shall be unlimited access to and the unlimited right to attend institutional meetings and proceedings of every kind and nature whatsoever, and it is

FURTHER ORDERED that the defendants shall post notices throughout the said jail stating that the Court has appointed a Special Master, who may from time to time visit the said jail, and talk to the staff members or inmates, as he shall desire to do so. The notice shall emphasize that the Special Master's only function is to determine the state of compliance with the orders of the Court; that his appointment is not to be considered as providing any substitute for, or addition to, the regular grievance and disciplinary procedures of the Lucas County Jail; that he is not to investigate, to arbitrate, or to interfere with the disposition of the grievances or complaints of individual inmates or staff members; that if the Special Master desires any information from either inmates or staff with respect to such matters, he will initiate the matter; and that if any person, inmate or staff member desires to bring any matter to the attention of the Special Master, he or she may do so only by making the desire known to counsel for the parties, who will then decide whether or not to bring the matter to the attention of the Special Master. The notices to be posted throughout the Lucas County Jail shall state the name and address of counsel for plaintiff and counsel for defendants. The notices shall remain posted until the Special Master has been discharged. The form of the notices shall be drafted by counsel and fixed by the Special Master, and it is

FURTHER ORDERED that not later than ninety days after his appointment, the Special Master shall file his first report, evaluating the compliance of the defendants with this Court's order of July 30, 1971. The report should, with respect to each particular findings therein, state the evidentiary basis for the finding, whether observation, interview, statistics, hearing, or any combination thereof. As to each item of said order, the report should show:

(1) the state of compliance;

(2) any applicable departmental or institutional regulations, and present actual practices thereunder in the Lucas County Jail;

(3) the degree of cooperation given the Special Master by the defendants and members of the staff of said jail, specifically naming any staff members who have been uncooperative and the details of their lack of cooperation; and

(4) a time-table for establishing full compliance with any portion of said order which the Special Master finds is not being complied with.

and it is

FURTHER ORDERED that after the filing of the initial report, the Special Master shall file reports not less often than every ninety days, until he finds that the Court's order of July 30, 1971, is being fully complied with in every respect, and that such compliance has been continuing for a sufficient length of time to make a lapse into noncompliance improbable. At that time the report of the Special Master may recommend his discharge and the termination of the Court's jurisdiction herein, and it is

FURTHER ORDERED that the Special Master shall be allowed his necessary expenses and reasonable fees for his services in carrying out his duties, which shall be taxed as part of the costs of this matter and assessed against the defendants in their official capacities as sheriff and county commissioners, to be paid out of funds budgeted by the Board of County Commissioners of Lucas County, Ohio for the operations of the Lucas County Sheriff's Department and Board of County Commissioners.

IT IS SO ORDERED.